SEPEHR DAGHIGHIAN, State Bar No. 239349
NATHAN TALEI, State Bar No.: 281498
**LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.**
433 North Camden Drive, Fourth Floor
Beverly Hills, California 90210
Telephone: (310) 887-1333
Facsimile: (310) 887-1334
E-mail: sepehr@daghighian.com
nathan@daghighian.com

Attorneys for Plaintiff:
**C. B. WORLDWIDE, INC.**

FILED
CLERK U.S. DISTRICT COURT
SEP 17 2013
CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| C. B. WORLDWIDE, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HANGZHOU YIZHAN PET PRODUCTS, CO, LTD., a China Company; GU JUN, an individual; LIU JUAN, an individual; ALLARA CHINA LIMITED, a China Company; SHANGHAI ITPC IMP/EXP CO., LTD., a China Company; PETLIKE, a China Company; and DOES 1 TO 10<br><br>Defendants. | Case No. **CV13-06855-ODW (SHx)**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

Plaintiff, C. B. WORLDWIDE, INC., A California Corporation ("CB" or "Plaintiff"), files this Complaint against HANGZHOU YIZHAN PET PRODUCTS, CO, LTD., a China Company ("HY"); GU JUN, an individual; LIU JUAN, an individual; ALLARA CHINA LIMITED, a China Company; SHANGHAI ITPC IMP/EXP CO., LTD., a China Company; PETLIKE, a China Company; and DOES 1 TO 50 (collectively "Defendants"), and demanding a trial by jury, avers as follows:

## SUBJECT MATTER JURISDICTION AND VENUE

1. This is a civil action for the recovery of damages and injunctive relief arising from Plaintiff's business relationship with Defendants. More specifically, Plaintiff seeks recovery from Defendants for their breaches of contractual obligations, theft of intellectual property, conversion of physical property, and violations of the covenant of good faith and fair dealing.

2. This Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000 and the action is between citizens of a State and citizens or subjects of a foreign state.

3. Specifically, Plaintiff is a California Corporation with its principal place of business located in Mammoth Lakes, California. Plaintiff maintains a second office in Los Angeles, California.

4. Defendants are citizens of China.

5. The individual defendants GU JUN and LIU JUAN are individuals residing in China. The corporate defendants, HANGZHOU YIZHAN PET PRODUCTS, CO, LTD., ALLARA CHINA LIMITED, SHANGHAI ITPC IMP/EXP CO., LTD., a China Company; PETLIKE, a China Company are companies registered in China and having their primary places of business in China.

6. The Court, therefore, has jurisdiction over the claims based on the diversity of the parties, pursuant to 28 U.S.C. § 1332.

7. The Court has supplemental jurisdiction of the state law claim under 28 U.S.C. §1367.

8. Venue is proper in this judicial district pursuant to 28 USC § 1391(b)(2) because a substantial number of the events and omissions giving rise to these causes of action took place within this judicial district.

9. Specifically, Plaintiff maintains a Los Angeles, California office and the parties have met several times over the course of their 10-year business relationship in Los Angeles, California.

## **PERSONAL JURISDICTION**

10. The Court has personal jurisdiction over Defendants, among other things, based on their substantial, continuous, and systematic business dealings with a California-based Plaintiff, under California Code of Civil Procedure § 410.10, California's long arm jurisdiction statute, which allows for the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."

11. Specifically, for approximately 10-years, Defendants have done extensive business with Plaintiff on a continuous and systematic basis.

12. Defendants business dealings with Plaintiff over the past 10-years have included: Making approximately 800 shipments of products to Plaintiff's California-based business; Receiving over Sixteen Million Dollars ($16,000,000) in payments from Plaintiff and Plaintiff's California-based bank; Meeting with Plaintiff in Los Angeles, California in connection with the business relationship between the parties on several occasions; Entering into numerous contracts with Plaintiff that required performance in California; Knowingly and deliberately delivering their products into California's stream of commerce with the expectation that they will be purchased by California consumers; and numerous further contacts with Plaintiff in California.

13. The Court, furthermore, has personal jurisdiction over Defendants

based upon their having purposefully availed themselves of the privileges of conducting business with a California-based corporation; because these claims arise as a result of Defendants California-related activities; and because the exercise of jurisdiction over Defendants under these circumstances, is reasonable.

14. Specifically, Defendants purposefully availed themselves of the benefits of doing business with a California-based business by, over the course of 10-years, making approximately 800 shipments of products to Plaintiff's California-based business and receiving over Sixteen Million Dollars ($16,000,000) in payments from Plaintiff.

15. Furthermore, these claims are related to and arise from the Defendants' activities in doing business with Plaintiff over the past 10-years.

16. Under these circumstances, Defendants have purposefully availed themselves of this Court's jurisdiction and the exercise of jurisdiction over the Defendants is reasonable.

17. The Court, furthermore, has personal jurisdiction over Defendants based on their presence within California.

18. The Court, therefore, has personal jurisdiction over the Defendants.

## **THE PARTIES**

19. Plaintiff, C. B. WORLDWIDE, INC., is a corporation organized and existing under the laws of the State of California. Plaintiff regularly conducts business under the name MAMMOTH PET PRODUCTS.

20. Plaintiff is in the business of manufacturing, distributing, and selling pet toys. Plaintiff is a national leader in the pet toy industry and its pet toys are sold extensively throughout the United States in many national chain retail stores.

21. Plaintiff is an innovator in the field of pet toys that spends significant resources in developing and protecting its intellectual property.

22. Plaintiff's trademarks, including the trademark MAMMOTH, have gained worldwide notoriety throughout the world and are commonly associated

with Plaintiff's high quality goods.

23. Because of Plaintiff's extensive efforts in developing innovative products, commitment to sustainable and responsible manufacturing, and leadership in the pet toy industry, Plaintiff has been recognized in its industry as one of the foremost manufacturers of pet toys.

24. Defendant HANGZHOU YIZHAN PET PRODUCTS, CO, LTD. ("HY") is a China company whose primary place of business is in Hangzhou City, China.

25. Upon information and belief, HY is a trading company that is in the business of serving as a representative and agent to China-based factories that manufacture goods for businesses located outside of China. Among other things, HY would assist Plaintiff broker orders for the manufacture of Plaintiff's products in China.

26. HY has served as Plaintiff's trading company and agent to China-based factories for approximately 10-years.

27. In connection with its role as Plaintiff's trading company and agent to several China-based factories, HY has: made approximately 800 shipments of products to Plaintiff's California-based business; received over Sixteen Million Dollars (US $16,000,000.00) in payments from Plaintiff and Plaintiff's California-based bank; met with Plaintiff in Los Angeles, California in connection with the business relationship between the parties on several occasions; entered into numerous contracts with Plaintiff that required performance in California; knowingly and deliberately delivered millions of dollars of products into California's stream of commerce with the expectation that they will be purchased by California consumers; and numerous further contacts with Plaintiff in California.

28. Defendants GU JUN and LIU JUAN (the "Individual Defendants") are individuals residing in and doing business in China.

29. Upon information and belief, the Individual Defendants are the sole

owners of HY and, accordingly, have personally directed HY'S activities, which are complained of herein.

30. Defendant ALLARA CHINA LIMITED ("ALLARA") is a China company whose primary place of business is in Hong Kong, China.

31. Like HY, ALLARA has served as Plaintiff's trading company and agent for the manufacture of Plaintiff's goods by one or more China-based factories.

32. Upon information and belief, the Individual Defendants are officers, owners, and/or agents of ALLARA.

33. Defendant SHANGHAI ITPC IMP/EXP CO., LTD. ("SHANGHAI ITPC") is a China company whose primary place of business is in Shanghai, China.

34. Like HY, SHANGHAI ITPC IMP/EXP CO., LTD. has served as a trading company for the manufacture of Plaintiff's goods by one or more China-based factories.

35. Upon information and belief, the Individual Defendants are officers, owners, and/or agents of SHANGHAI ITPC IMP/EXP CO., LTD.

36. Defendant PETLIKE is a China company whose primary place of business is in China and is believed to be a fictitious business name used by HY and/or one of the other Defendants.

37. Plaintiff is informed, believes and thereon alleges, that each of the Defendants are the agent and/or employee of each and every other Defendant, and in doing the things herein alleged, each Defendant was acting in the course and scope of said agency and/or employment and that each of the acts of the Defendants was ratified and confirmed by each and every other Defendant.

38. Collectively, HANGZHOU YIZHAN PET PRODUCTS, CO, LTD., ALLARA CHINA LIMITED, and SHANGHAI ITPC IMP/EXP CO., LTD., are referred to hereinbelow as the "Corporate Defendants."

39. Plaintiff is informed, believes, and thereon alleges, that, in entering

into the contractual obligations alleged hereinbelow, the Individual Defendants did so on behalf of any and all of the various Corporate Defendants for whom they worked.

40. Plaintiff is informed, believes and thereon alleges, that the Individual Defendants directed the tortious activities of the Corporate Defendants, such that said Individual Defendants are personally liable for said tortious activities.

41. Plaintiff is informed, believes and thereon alleges, that at all times relevant to this action, there existed a unity of interest and ownership between and among the Individual Defendants the Corporate Defendants, and each of them, such that the individuality and separateness between them ceased.

42. Plaintiff does not know the true names or capacities of the DOE Defendants and therefore sues those defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of those fictitiously named defendants is responsible in some manner for the improper acts or omissions herein alleged and that Plaintiff's injuries as herein alleged were proximately caused by those acts and omissions.

## COUNT I
## BREACH OF ORAL CONTRACTS

43. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

44. Throughout the course of the business relationship between Plaintiff and Defendants, the Parties entered into numerous oral contracts in order to govern their business relationship.

45. Many of the oral contracts complained of herein were confirmed by written communications exchanged between the Parties and by the parties extensive business dealings.

46. On or about May 15, 2003, through Defendant GU JUN, the Parties

entered into an oral contract whereby Defendants would serve as Plaintiff's manufacturer's representative and trading company for China-based factories that would manufacture Plaintiff's products.

47. It was agreed among the Parties, through Defendant GU JUN, that Plaintiff would maintain sole ownership of all of its intellectual property and that Defendants would have no ownership rights to said intellectual property.

48. The foregoing arrangement is consistent with international commercial standards, which provide that a foreign manufacturer does not receive any ownership rights to the intellectual property connected with a product that it manufactures; but, only a limited license to manufacture products for the principal's benefit using the principal's intellectual property.

49. Defendants' breached the foregoing agreement by claiming ownership and attempting to register Plaintiff's intellectual property with China's intellectual property office.

50. Specifically, Defendants (by and through Defendant HY) have sought to register at least twenty-five (25) of Plaintiff's products as patents with the China Intellectual Property Office. Attached hereto as **Exhibit "A"** and incorporated herein by reference is a table, which lists the twenty-five (25) patents that Defendants have applied for based on Plaintiff's products. As detailed on **Exhibit "A,"** many of these products are protected by patents and/or trademarks filed with the United States Patent and Trademark Office by Plaintiff.

51. Furthermore, Defendants (by and through Defendant HY) have sought to register trademarks with the China Intellectual Property Office for several of Plaintiff's trademarks. Attached hereto as **Exhibit "B"** and incorporated herein by reference is a table, which shows fifteen (15) trademark applications, which have been filed by Defendants for Plaintiff's trademarks. The table attached hereto as **Exhibit "B"** also shows Plaintiff's trademarks, which are identical to the illegal and improper applications filed by Defendants.

52. Upon information and belief, the foregoing activities were directed by Defendant GU JUN.

53. Such activities are not only reprehensible, but, furthermore constitute a breach of the oral agreements entered into among the Parties.

54. On or about May 15, 2003, through Defendant GU JUN, the Parties agreed that, during the term of Defendants' business relationship with Plaintiff, Defendants would not serve as manufacturer's representative or trading company for any other United States or Canada based companies.

55. On or about November 1, 2012, Defendants violated the foregoing agreement by serving as the manufacturer's representative and trading company for the company European Home Design, based in New York, New York.

56. On or about May 15, 2003, by and through Defendant GU JUN, the Parties entered into an oral contract, which provided that Plaintiff's products would only be manufactured in China by factories that were approved in advance by Plaintiff.

57. On or about March 29, 2012, Plaintiff learned that Defendants had violated this agreement by manufacturing goods for Plaintiff in a factory that had not been approved in advance by Plaintiff.

58. Plaintiff was damaged as a result of the foregoing activities because the unapproved factory produced substandard products, which resulted in damages and disruptions to Plaintiff's business relationship with its customers.

59. On or about September 1, 2008, by and through Defendant GU JUN Plaintiff and Defendants entered into an oral agreement, which provided that Defendants would pay Plaintiff a five-percent (5%) commission on all sales to Regent Products, a Chicago, Illinois-based wholesale distributor of pet products that was referred to Defendants by Plaintiff.

60. On or about September 1, 2011, this commission rate was reduced to three-percent (3%).

- 9 -

**COMPLAINT**

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

61. In accordance with the foregoing agreement, Defendants paid Plaintiff three-percent (3%) commissions by and through March 30, 2013.

62. Defendants, however, have refused to pay commissions on sales from April 1, 2013 through the present date.

63. On or about December 15, 2010, by and through Defendant GU JUN, the Parties entered into an oral contract, which provided that Plaintiff would supply Defendants with designs for Plaintiff's products to be configured into molds from which to produce products.

64. Defendants instructed a mold manufacturer to produce molds for Plaintiff based upon these designs.

65. Plaintiff's molds for its pet products were transfer from the mold manufacturer to Defendants in order that Defendants could manufacture Plaintiff's products.

66. It was agreed among the Parties that molds would be owned by Plaintiff and, upon completion of said manufacturing activities, the product molds would be returned to Plaintiff.

67. Said manufacturing has been completed and Plaintiff has made a demand to Defendants for the return of said molds.

68. However, to date, Defendants have refused to return product molds: attached in the list attached hereto as **Exhibit "C."**

69. Plaintiff has been damaged by Defendants' foregoing breaches of their oral contracts with Plaintiff for an amount to be proven at trial.

## COUNT II

## BREACH OF IMPLIED CONTRACTS

70. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

71. On or about May 15, 2003, the Parties entered into implied contract whereby Defendants would begin serving as Plaintiff's manufacturer's

representative and trading company to China-based factories that would manufacture Plaintiff's products.

72. It was implicitly, if not explicitly, agreed among the Parties that Plaintiff would maintain sole ownership of all of its intellectual property and that Defendants would have no ownership rights to said intellectual property.

73. The foregoing arrangement is consistent with international commercial standards, which provide that a foreign manufacturer does not receive any ownership rights to the intellectual property connected with a product that it manufactures; but, only a limited license to manufacture products for the principal's benefit using the principal's intellectual property.

74. Defendants breached the foregoing agreement by claiming ownership and attempting to register Plaintiff's intellectual property with China's intellectual property office.

75. Specifically, Defendants (by and through Defendant HY) have sought to register at least twenty-five (25) of Plaintiff's products as patents with the China Intellectual Property Office. Attached hereto as **Exhibit "A"** and incorporated herein by reference is a table, which lists the twenty-five (25) patents that Defendants have applied for based on Plaintiff's products. As detailed on **Exhibit "A,"** many of these products are protected by patents and/or trademarks filed with the United States Patent and Trademark Office by Plaintiff.

76. Furthermore, Defendants have sought to register trademarks with the China Intellectual Property Office for several of Plaintiff's trademarks. Attached hereto as **Exhibit "B"** and incorporated herein by reference is a table, which shows fifteen (15) trademark applications, which have been filed by Defendants for Plaintiff's trademarks. The table attached hereto as **Exhibit "B"** also shows Plaintiff's trademarks, which are identical to the illegal and improper applications filed by Defendants.

77. Upon information and belief, said activities were directed by

Defendant GU JUN.

78. Such activities are not only reprehensible, but, furthermore constitute a breach of the oral agreements entered into among the Parties.

79. On or about December 15, 2010, the Parties entered into an implied contract, that Plaintiff would supply Defendants with designs for Plaintiff's products to be configured into molds from which to produce products.

80. Defendants instructed a mold manufacturer to produce molds for Plaintiff based upon these designs.

81. Plaintiff's molds for its pet products were transfered from the mold manufacturer to Defendants in order that Defendants could manufacture Plaintiff's products.

82. It was agreed among the Parties that molds would be owned by Plaintiff and, upon completion of said manufacturing activities, the product molds would be returned to Plaintiff.

83. Said manufacturing has been completed and Plaintiff has made a demand to Defendants for the return of said molds.

84. However, to date, Defendants have refused to return product molds: attached in the list attached hereto as **Exhibit "C"** and incorporated herein by reference.

85. Plaintiff has been damaged by Defendants' foregoing breaches of their implied contracts with Plaintiff for an amount to be proven at trial.

## COUNT III

## CONVERSION AND MISAPPROPRIATION

## OF INTELLECTUAL PROPERTY

86. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

87. Plaintiff is an innovator in the field of pet toys. Plaintiff, therefore, has made extensive efforts in protecting its intellectual property by registering its

trademarks and patents domestically and internationally.

88. Throughout the course of the Parties business relationship, Defendants became aware of Plaintiff's valuable intellectual property, including Plaintiff's trademarks and patents.

89. After learning of Plaintiff's valuable intellectual property, upon information and belief, Defendants conspired, without the knowledge or consent of Plaintiff, to attempt to illegally register Plaintiff's trademarks and patents in China.

90. Attached hereto as **Exhibit "A"** is a list of Plaintiff's products that Defendants illegally and improperly claimed to own through patent applications filed with the China Intellectual Property Office. All twenty-five of these patent applications falsely claim ownership of Plaintiff's products; many of which are covered by Plaintiff's United States and international patents.

91. Attached hereto as **Exhibit "B"** is a list of Plaintiff's trademarks that Defendants have illegally and improperly claimed to own through trademark applications filed with the China Intellectual Property Office. All fifteen (15) of these applications are illegal and improper because they claim ownership of trademarks that are owned solely by Plaintiff.

92. Upon information and belief, said activities were directed by Defendant GU JUN and conducted under the name of Defendant HY.

93. Plaintiff is the sole owner of its intellectual property and Defendants did not have and do not have any ownership rights to Plaintiff's intellectual property whatsoever.

94. Defendants did not have and do not have any authority from Plaintiff whatsoever to register Plaintiff's intellectual property in China.

95. Based on international commercial standards, a foreign manufacturer does not receive any ownership rights to the intellectual property connected with a product that it manufacturers; but, only a limited license to manufacture products for the principal's benefit using the principal's intellectual property.

- 13 -

COMPLAINT

96. All of the intellectual property listed in **Exhibits "A"** and **"B"** are owned solely Plaintiff, were taken from Plaintiff by Defendants without Plaintiff's consent, and therefore, must be ordered returned to Plaintiff.

## COUNT IV

## CONVERSION AND MISAPPROPRIATION

## OF PRODUCT MOLDS

97. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

98. Throughout the course of Plaintiff's business relationship with Defendants, Plaintiff provided to Defendants numerous molds that were used in order to manufacture Plaintiff's pet products.

99. More specifically, Plaintiff supplied to Defendants the product molds listed in **Exhibit "C"** hereto and incorporated herein by reference.

100. Plaintiff is the owner of said molds and supplied the molds to Defendants solely for use while Defendants manufactured Plaintiff's products. It was understood among the Parties, that following the conclusion of manufacturing, said molds would be returned to Plaintiff.

101. Plaintiff has made a demand for the return of said molds listed in **Exhibit "C"**; but, to date, Defendants have not returned said molds to Plaintiff.

102. All such property was owned solely Plaintiff, was taken from Plaintiff by Defendants without Plaintiff's consent, and therefore, must be ordered returned to Plaintiff.

## COUNT V

## UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS

## AND PROFESSIONS CODE SECTION 17200

103. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

104. The foregoing acts of Defendants constitute unfair competition and

unfair, unlawful, deceptive, and fraudulent business practices in violation of California Business and Professions Code § 17200.

105. Plaintiff has been and will continue to be irreparably injured and damaged by Defendants' acts of unfair competition.

106. Defendants' conduct has damaged Plaintiff and will, unless enjoined by the Court, impair the value of Plaintiff's name, reputation, and goodwill.

107. Plaintiff has no adequate remedy at law.

## COUNT VI
## BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING

108. Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

109. Plaintiff and Defendants entered into a series of contracts over the course of 10-years for the supply of merchandise by Defendants to Plaintiff's business.

110. Plaintiff performed all tasks that were required of it to perform throughout the parties' relationship and fulfilled all of its required obligations under the subject contracts.

111. Accordingly, Plaintiff was entitled to expect the full performance on the contracts by Defendants.

112. By engaging in the dishonorable and wrongful acts set forth hereinabove, Defendants made it impossible for Plaintiff to receive the benefits of its contract performance.

113. Plaintiff, accordingly, was damaged by Defendants to an extent to be proven at trial.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, CB WORLDWIDE, INC., prays that the Court enter a judgment in favor of Plaintiff as follows:

(1) That Plaintiff is the sole owner of any patent rights associated with the product designs listed in **Exhibit "A;"**

(2) That ownership of all patent applications associated with the product designs listed in **Exhibit "A"** be transferred to Plaintiff, CB WORLDWIDE, INC.;

(3) That Defendants, and each of them, be required to execute any and all documents necessary to effectuate the transfer of the patent applications listed in **Exhibit "A"** to Plaintiff;

(4) That Plaintiff is the sole owner of any trademark rights associated with the trademarks listed in **Exhibit "B;"**

(5) That ownership of all trademark applications and/or trademark registrations associated with the trademarks listed in **Exhibit "B"** be transferred to Plaintiff, CB WORLDWIDE, INC.;

(6) That Defendants, and each of them, be required to execute any and all documents necessary to effectuate the transfer of the trademark applications and/or trademark registrations listed in **Exhibit "B"** to Plaintiff;

(7) That Defendants, and each of them, and their directors, officers, employees, attorneys, agents, and all persons in active concert or participation with any of the foregoing be preliminarily and permanently enjoined from further acts of registering any of Plaintiff's intellectual property; including, but not limited to, the intellectual property listed in **Exhibits "A"** and **"B;"**

(8) That Defendants, and each of them, immediately return to Plaintiff any and all of Plaintiff's product molds in their possession; including, but not limited to, the product molds listed in **Exhibit "C"** attached hereto.

(9) That Defendants, and each of them, and their directors, officers, employees, attorneys, agents, and all persons in active concert or participation with

1  any of the foregoing be preliminarily and permanently enjoined from further
2  importing pet products to the United States in violation of the exclusively
3  agreement set forth hereinabove;

4      (10)  That Defendants, and each of them, be jointly and severally obligated
5  to pay Plaintiff monetary damages of US$750,000.00;

6      (11)  That the foregoing damages awards be trebled;

7      (12)  That Plaintiff be awarded its reasonable costs and attorney's fees; and

8      (13)  That Plaintiff has such other and further relief as the Court may deem
9  equitable.

Dated: September 18, 2013

          Respectfully submitted,
          **LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.**

          _____
          SEPEHR DAGHIGHIAN, ESQ.
          Attorney for Plaintiff: C. B. WORLDWIDE, INC.

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues raised by this Complaint which are triable by jury.

Dated: September 18, 2013

                                          Respectfully submitted,
                                          **LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.**

                                          _____
                                          SEPEHR DAGHIGHIAN, ESQ.
                                          Attorney for Plaintiff: C. B. WORLDWIDE, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Otis D. Wright II_____ and the assigned Magistrate Judge is _____Stephen J. Hillman_____.

The case number on all documents filed with the Court should read as follows:

**2:13-CV-6855-ODW (SHx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 17, 2013          By  MDAVIS
Date                            Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☑ Western Division  
312 N. Spring Street, G-8  
Los Angeles, CA 90012

☐ Southern Division  
411 West Fourth St., Ste 1053  
Santa Ana, CA 92701

☐ Eastern Division  
3470 Twelfth Street, Room 134  
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**